## WYNNE v. GIBSON.

No. 21312.    Dec. 12, 1933.

As corrected Jan. 8, 1934.

Hummer & Foster, for plaintiff in error.

Jas. M. Shackelford (Logan Stephenson and Ethel M. Proffitt, on the brief), for defendant in error.

WELCH, J. The plaintiff, H. C. Wynne, prosecutes this appeal from the district court of Okfuskee county, where he brought suit against the defendant, P. E. Gibson, to recover an undivided one-sixteenth interest in the oil and gas rights in certain described lands, and for an accounting for rents and profits collected by defendant on the one-sixteenth interest claimed by plaintiff.

In the district court, following trial to the court, there was judgment for the defendant quieting defendant's title in and to the said one-sixteenth interest and canceling plaintiff's grant of a one-sixteenth interest in said oil and gas rights.

We must here note the facts in detail. There was some conflict in the testimony, but the following facts are fairly discernible from all the evidence. W. R. Wilson purchased an undivided one-half interest in the oil and gas rights. It seems that when this one-half interest was purchased by Wilson the purchase was to be shared in by others, including the defendant, Gibson, and Charles Severs and Guy Fisher; that is, the others were to purchase certain portions of the one-half interest from Wilson and pay therefor. The evidence is conflicting as to whether the plaintiff knew of the purchase at the time, and was from the beginning to share in the purchase. At any rate, the conveyance of the one-

half interest was taken in the name of Wilson. The money to pay for the one-half interest was borrowed from a bank of which the defendant, Gibson, was vice president. The note for the loan was signed by Charles Severs and indorsed by Wilson and Guy Fisher, but throughout the various transactions was considered by all the parties as the debt of Wilson. The note was *not signed by the plaintiff*, H. C. Wynne, nor by the defendant, and the bank had no lien on the oil and gas rights purchased in the name of Wilson. Very shortly after the purchase, W. R. Wilson conveyed one-sixteenth interest to the defendant, Gibson, and one-sixteenth to the plaintiff. Probably, also, Wilson conveyed interests to Severs and to Fisher, and one to Duvall, but if these conveyances were ever in fact executed, they were never recorded, and were not introduced in evidence, and the evidence as to those conveyances is not wholly clear, and for that matter not of great importance, because there is no contention that any one owned any interest at any time, except Wilson and the plaintiff and defendant. For their one-sixteenth interest each, the plaintiff and defendant paid in cash; the defendant paid his part in cash and it was paid to the bank and credited on the note. The plaintiff purchased his one-sixteenth interest through Fisher, to whom he paid the purchase price in cash. This sum was not paid to the bank on the note. The plaintiff contended he knew nothing of the note the bank had at that time, and this contention is not successfully refuted. The plaintiff's grant of one-sixteenth interest was not recorded by him. This was either to leave the record title in Wilson for convenience in selling for the joint interest of all, as plaintiff contended, or was, by agreement or understanding, not to be recorded until the debt to the bank was paid, as defendant contended. At any rate, the plaintiff's grant remained unrecorded, although the defendant at all times knew of the grant of the one-sixteenth interest to plaintiff, and its absence from the record is therefore unimportant in this suit between plaintiff and defendant.

Some eight months later, the debt to the bank remaining unpaid, and the defendant, Gibson, insisting upon its payment, W. H. Wilson, being in financial difficulties and unable to pay the note, executed to Gibson a grant of seven-sixteenths interest in the oil and gas rights. While this grant was not made to the bank, but to the defendant, Gibson, vice president of the bank, yet the trial record is clear that it was given as security or additional security for the debt due the bank. At the time of the execution of this grant, W. H. Wilson only owned six-sixteenths interest and did not own the seven-sixteenths interest which he purported to convey. It is not wholly clear why he referred to his interest then as seven-sixteenths interest, though it is suggested in the record that he had forgotten for the moment that he had theretofore conveyed one-sixteenth interest to the plaintiff. However, no one contends that this grant conveyed seven-sixteenths interest to Gibson, as will appear from the further statement of facts.

Thereafter, the debt to the bank still remaining unpaid, and Wilson being unable to pay it, the defendant, Gibson, insisted that the oil and gas rights be sold to pay the debt to the bank. Wilson seemed to fully acquiesce in the thought that this should be done. It was defendant's, Gibson's, thought that, since the seven-sixteenths interest grant had been, in fact, made to defendant, Gibson, as additional security for the bank debt, Wilson should execute a general quit-claim to Gibson in order to bar any claim or thought that the seven-sixteenths interest grant should be treated as a mortgage or lien and foreclosed. This, also, Wilson was entirely willing to do, and thereupon Wilson executed his quitclaim deed to the defendant, Gibson. By this quitclaim deed, Wilson, as it is clearly shown, intended to fully surrender his interest in the oil and gas rights in order that same might be held until a sale could be made and then sold to pay or to apply upon the bank debt. It is clear that it made no difference to Wilson to whom he surrendered his interest so long as it was taken and held and sold to apply on the bank debt, and he did not deliver this quitclaim deed to the defendant, Gibson, but delivered it to the plaintiff, Wynne, on Wynne's request. This seems to have been to give plaintiff, Wynne, an opportunity to take over the remaining interest in the oil and gas rights and pay the bank debt, but Wynne did not elect to do this, and thereafter, at the request of the defendant, Gibson, the plaintiff, Wynne, delivered the quitclaim deed to the defendant, Gibson. At the time of this delivery there was a conversation between plaintiff and defendant. There is some conflict in the testimony as to the minute details of this conversation, but, at any rate, the plaintiff, Wynne, delivered the quitclaim deed to the defendant, Gibson, thoroughly understanding that

it was executed by Wilson and received by Gibson in order that a sale might be made and the proceeds used to pay the bank debt. At that time it was the thought of the defendant, Gibson, and he so stated to plaintiff, that it would be necessary to sell the entire one-half interest, or eight-sixteenths of the oil and gas rights, in order to pay the bank debt, and he, Gibson, feeling himself morally bound to pay the debt to the bank of which he was vice president, was willing to sacrifice his individual one-sixteenth interest, which he had bought and paid for, in order to pay the debt to the bank. He so stated in substance to the plaintiff, and the record clearly shows that the plaintiff, Wynne, consented, or was willing that his one-sixteenth interest, which he had bought and paid for, should likewise be sacrificed in order that the debt to the bank be paid. However, upon the part of the plaintiff, Wynne, this consent was given clearly upon his understanding based upon the representations of the defendant, Gibson, that it would be necessary to sell the entire eight-sixteenths interest to pay the bank debt. And the quitclaim deed from Wilson to Gibson was then delivered to Gibson.

In selling the oil and gas rights, and in selling the oil and gas lease, the defendant, Gibson, was more fortunate than he anticipated, and he succeeded in paying the debt to the bank in full, and in order to do so was only required to sell seven-sixteenths of the oil and gas rights and a lease on the remaining one-sixteenth. In fact, after he had sold the seven-sixteenths of the oil and gas rights and the lease, he had slightly more than enough to pay the bank debt, to be exact, the sum of $237.50, and royalty interests on five acres in other lands which, in his selling of the seven-sixteenths interest, came to him as profit over and above the money necessary to pay the bank debt. So, after payment of the bank debt, there remained an undivided one-sixteenth of the oil and gas rights and the five-acre royalty interest in other lands, and the sum of $237.50; and the question in this case is whether that remainder belongs to the plaintiff, Wynne, or to the defendant, Gibson.

It was the contention of the plaintiff, Wynne, that he should have this remainder, or at least the remaining one-sixteenth interest, and the $237.50, because the quitclaim deed from Wilson to Gibson did not convey to Gibson the one-sixteenth interest of Wynne, and that therefore when Gibson paid the bank debt by selling the seven-sixteenths interest, the remaining one-sixteenth interest and the above sum of money belonged to him, the plaintiff. Upon the other hand, it was the contention of the defendant, Gibson, that the quitclaim from Wilson to Gibson, which was fully acquiesced in by the plaintiff, Wynne, did in truth and in fact convey to Gibson the one-sixteenth interest of Wynne, and that the plaintiff, Wynne, by his conduct in acquiescing in the quitclaim, and surrender of the oil and gas rights by Wilson to Gibson, was estopped from asserting or claiming any further interest in the oil and gas rights. In the trial court the defendant tendered to plaintiff the five-acre royalty interest, but, from the view we take of the record, that fact is unimportant.

We think neither the theory of the plaintiff nor the theory of the defendant is sustainable in whole.

We conclude that at the time of the execution of the quitclaim deed from Wilson to Gibson, the situation was this: Plaintiff owned one-sixteenth interest; defendant owned one-sixteenth interest, and W. R. Wilson owned six-sixteenths interest, which he, Wilson, was willing to sacrifice and surrender to any one who would take it and sell it to pay or apply the proceeds on his debt to the bank. The plaintiff delivered this quitclaim deed to Gibson, keeping his own one-sixteenth grant off of record, intending thereby that the defendant, Gibson, should become the owner of the entire record title for a specific purpose, and that was with full power to sell all of the eight-sixteenths interest to pay the debt, and consenting freely that this should be done, and that he should thereby sacrifice all of his one-sixteenth interest; but, on the part of the plaintiff, it is clear that this was done upon the theory, as represented by the defendant, Gibson, that it would be necessary to sell all of the eight-sixteenths interest to pay the bank debt. The defendant, Gibson, accepted this quitclaim deed, and accepted the plaintiff's, Wynne's, sacrifice of his one-sixteenth interest, and was willing to sacrifice his own one-sixteenth interest also, upon the theory, as clearly expressed by him, that it would be necessary to sell the entire eight-sixteenths interest to pay the bank debt. It seems thoroughly clear that, if it had been necessary to sell all of the eight-sixteenths interest to pay the debt, then the plaintiff would have been estopped to assert any interest whatever, and would have been forced to lose all of his one-sixteenth interest, which he was willing to do, and

likewise, in that event, the defendant, Gibson, would have lost all of his one-sixteenth interest. It also is clearly true that, if the bank debt could have been paid by sale of six-sixteenths interest only, then the plaintiff would in no manner have been estopped from claiming his one-sixteenth interest, and likewise the defendant, Gibson, would have been entitled to continue to own all of his one-sixteenth interest. But, in truth and in fact, in order to pay the bank debt, it required the sale of seven-sixteenths interest. The plaintiff, Wynne, had bought and paid for his one-sixteenth interest, and likewise the defendant, Gibson, had bought and paid for his one-sixteenth interest. Neither was under legal obligation to pay the note to the bank, that is, neither of them had signed or indorsed the note. So far as the record shows, nothing had been paid for the other six-sixteenths interest, and there was the unpaid debt to the bank. As we view the record, the acts, conduct, and statements of the plaintiff, Wynne, and the defendant, Gibson, constituted an agreement between them to the effect that the entire eight-sixteenths interest should be handled as a unit for the payment of the debt to the bank. The defendant, Gibson, was willing that the plaintiff, Wynne, should take and so handle it, and the plaintiff, Wynne, acquiesced in defendant's Gibson's, taking and so handling it, and that was the plan adopted. If the eight-sixteenths interest had all been sold without yielding enough to pay the bank debt, there is no theory upon which either plaintiff or defendant would have been personally liable for any part of the deficit, because neither signed the note, but we think, beyond question, we must imply that, if any profit resulted in selling the eight-sixteenths interest to pay the bank debt, or if any part of the eight-sixteenths remained after selling the balance and paying the debt, that any such profit, and any such remainder, should be divided equally between the plaintiff, Wynne, and the defendant, Gibson, since they were jointly handling the matter, each agreeing to sacrifice his one-sixteenth interest, or so much thereof as would be necessary, together with the other six-sixteenths interest, to pay the bank debt. There is nothing whatever in the record to show that the plaintiff, Wynne, was willing to sacrifice his interest, which he had bought and paid for, in order that the defendant, Gibson, might preserve his interest intact. Likewise there is nothing whatever in the record to indicate that the defendant, Gibson, although

vice president of the bank, was willing to sacrifice his one-sixteenth interest, which he had bought and paid for, in order that the plaintiff, Wynne, might preserve his interest intact.

We think it must be true that when two persons each voluntarily, and without further consideration, furnish an equal sum of money to be commingled and handled by one of them as a unit to accomplish a certain purpose mutually desired by both of them, and the aggregate sum is so handled, and the mutually desired purpose is accomplished by an expenditure of a part only of the aggregate sum, then, certainly, the facts and circumstances may be such as to make them jointly and equally interested in the remaining balance of the aggregate sum. And in such cases the one who handled the aggregate sum and had possession of the remaining balance would hold one-half of such remaining balance in trust for his associate, and should account to him for it.

The rule would be the same, of course, whether that which remained was a part of the specific money of the aggregate sum, or consisted in part of such specific money and in part of property acquired in the course of the proper handling of the aggregate fund.

Likewise it would be true that when two persons each own equal undivided interests in oil and gas rights in and to the same tract of land, and have mutually agreed to the merger of their title and to the handling of the aggregate oil and gas rights as a unit by one of them in order to accomplish a purpose mutually desired, or agreed to by both of them, the facts and circumstances may be such as to constitute a relationship similar to that of partners, or joint adventurers, to the extent that they would jointly share in any portion of the aggregate interest remaining after the desired purpose had been fully accomplished, and in any net profits realized from the handling of the aggregate of their interests. This would surely be true, even though neither thought in the beginning that any profit would result, or that there would be any remainder of property.

This rule might be different if it were expressly agreed that the one who handled the aggregate property interest, or sum of money, should himself have the remainder thereof, or any profits realized in the venture, but in the case at bar there is not the slightest implication of any such agree-

ment. Here both the plaintiff and defendant were willing to sacrifice their interests and to pool their interests for the mutually desired purpose, that is, each was willing to sacrifice his entire interest to accomplish payment of the debt, but there is not the slightest indication whatever that either was willing to give his interest, or any part of it, to the other, nor was either willing for the other to individually have and own any remainder or any profit.

The plaintiff and defendant, in so far as they agreed to the pooling of their interests, such aggregate interests to be used with the Wilson interest to accomplish the agreed purpose of paying the debt to the bank, were joint adventurers. Such relationship is fiduciary in its character, and one will be held strictly to account to his coadventurer, and he will not be permitted, by reason of the possession of the property or profits, to enjoy an unfair advantage, or have any greater rights in the property by reason of the fact that he is in possession of the property or profits as trustee, than his coadventurer is entitled to. 15 R. C. L. 500-501.

Even though the defendant, Gibson, believed that he had the right to acquire and hold the profits and remaining interest after payment of the bank debt, for himself alone, equity will not permit him to deprive his associate of his share of whatever he, Gibson, acquired as a result of his handling of the aggregate property interests for the mutually agreed purpose, or whatever remained of the aggregate property interests. Lind v. Webber (Nev.) 134 P. 461.

The defendant holds title to an undivided one-thirty-second interest in and to the oil and gas rights which must be, and is, held to rightfully belong to the plaintiff. As to that particular interest it might be well said that a resulting trust arises.

"* * * A resulting trust may be defined as one which arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears, or is inferred from the terms of the disposition or from the accompanying facts and circumstances, that the beneficial interest is not to go or to be enjoyed with the legal title. A trust of this sort does not arise from or depend on any agreement between the parties. Its very name implies that it is independent of any contract and is raised by the law itself on a particular state of facts. * * *" 26 R. C. L. 1214.

We think these rules clearly apply in

the case at bar and dictate a proper decision of the controversy.

The trial court accepted and adopted the theory of the defendant, Gibson, and rendered judgment in favor of the defendant denying the plaintiff any relief, and canceling the plaintiff's grant of one-sixteenth interest, and quieting the defendant's title in and to one-sixteenth interest. In this there was error for the reason that the judgment of the trial court was clearly against the weight of the evidence. To the contrary, the evidence and record clearly shows the facts to be as above stated, and under those facts the plaintiff was and is entitled to some relief, and that is, to be declared the owner of one-half of the remaining one-sixteenth interest, or, in other words, an undivided one-thirty-second interest in the oil and gas rights in question, leaving the defendant as the owner of the remaining one-thirty-second interest.

This brings us to the consideration of the accounting feature of the case, and we find from the record that the defendant holds as the fruits of the entire transaction the net sum of $237.50 in money, and a property interest amounting to five acres interest in royalty in other lands. For these benefits the defendant paid no consideration whatever, but he holds them as the fruits of the efforts which we construe to be the joint efforts of the plaintiff and defendant to handle the oil and gas rights to pay the debt to the bank. If it be contended that the time spent by the defendant, Gibson, in making the transactions and sales necessary to dispose of the seven-sixteenth interest to pay the debt should form any consideration, we must conclude that his desire to see the debt paid to his bank, and his willingness to handle the transaction, formed the basis for his undertaking to handle the matter, and would prohibit his taking any profit from the transaction as between himself and the plaintiff, Wynne. It must be borne in mind at all times that neither W. R. Wilson, nor Severs, nor Fisher, nor Duval, nor any other person, is claiming any interest in this transaction, save and except the plaintiff and the defendant themselves, and we conclude that the remaining one-sixteenth interest in the oil and gas rights must be divided equally between plaintiff said defendant, and that, likewise, they must equally divide the said sum of $237.50 and the five acres royalty interest now held by the defendant.

In denying the plaintiff this relief the judgment of the trial court is not supported

by the evidence, and is clearly against the weight of the evidence, and we conclude that the judgment must be reversed and the cause must be remanded to the trial court, with directions to enter judgment for the plaintiff for the recovery from the defendant of an undivided one-thirty-second interest in the oil and gas rights in and to the lands in question, subject to the oil and gas lease of record, and further judgment for the plaintiff for one-half of the sum of $237.50 ,and one-half interest in the five-acre royalty interest held by the defendant, and that the judgment quiet defendant's title in and to an undivided one-thirty-second interest in the oil and gas rights, and the remaining one-half of the said sum of $237.50, and remaining one-half of the five-acre royalty interest. The status of the parties and their respective rights to share in the property and money involved having been determined, it naturally follows that if, since the original trial, the defendant has received other or further money as delay rentals or otherwise, for or on account of the property rights held by defendant, but owned jointly by plaintiff and defendant, each an undivided one-half interest, then and in that event the defendant should further account to plaintiff for one-half of such subsequent receipts. The district court of Okfuskee county should settle the entire controversy in this action, and on application of the plaintiff may and should require the defendant to further account to plaintiff for one-half of any such other and further sums received by defendant as aforesaid since the original trial. And it is so ordered.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN and BUSBY, JJ., concur. BAYLESS, J., absent.